## EVANS *v.* CHARLESTON AND WESTERN CAROLINA RAILROAD COMPANY.

There can be no recovery against a railway company for personal injuries sustained in consequence of a defective bridge on a private crossing over the railroad, when the person injured, before entering on the bridge, knew of its defective condition and that the danger of crossing it was exceedingly great and obvious, and notwithstanding this knowledge undertook to cross the bridge when there was no emergency nor necessity for incurring the risk. This is true notwithstanding it may have been the duty of the railway company to keep the bridge in repair. Such being the case as developed by the testimony for the plaintiff, the court did not err in granting a nonsuit.

Argued May 31, — Decided July 22, 1899.

Action for damages. Before Judge Callaway. Columbia superior court. September term, 1898.

*John T. West* and *F. E. Obenauf,* for plaintiff.
*Joseph R. Lamar,* for defendant.

LEWIS, J. Lizzie Evans brought her suit for damages against the Charleston & Western Carolina Railway Company, in Columbia superior court. Briefly stated the case made by her petition is substantially as follows: The railway line of the defendant company runs through petitioner's farm in front of her house, cutting her off from an outlet to the public highway except by crossing the defendant's railroad. A private way runs from her house and home to the public highway across defendant's line of railroad. There are ditches three or four feet deep on both sides of the track where the private way crosses it, across which ditches bridges or crossings have been built, the bridges being located on the right of way of the defendant and within two or three feet of its track. On September 10, 1896, petitioner, having innumerable times passed over the crossing and bridges, started across the bridge nearest her home on said private way, intending to go out upon the public highway, and while crossing it she fell through the bridge on account of defects in the planks, and because the bridge was not properly covered with planks and nails, and was otherwise defective; her fall precipitating her into the ditch, breaking her right ankle and causing her great pain and suffering (the inju-

ries and damages being particularly set forth in the petition). The bridge where petitioner was injured was out of repair, and it was the duty of the defendant company to keep it in safe condition, as it was part of a private way established pursuant to law. At the time the railroad line was first built petitioner's land was owned by her mother, and the railroad was built by the Augusta & Knoxville Railway Company. As soon as the road was built this company made a suitable crossing across its track and built bridges across the said ditches at a place between petitioner's house and the public highway, for teams and persons going into and out from said estate. Previously to the building of the road parties living on the line had a private way from the house to the public highway, and the bridges and crossings were constructed by the railway company where the private way crossed the railroad-track. The company that constructed the road bought a right of way through the plaintiff's land from her mother, and kept the bridges in repair. In September, 1896, the Augusta & Knoxville railroad was purchased by the defendant, who has been operating the same since; and it is claimed that the defendant is liable and responsible for all public highways and private ways that the original owner was liable to keep in repair, and for injuries on account of neglect to keep the crossings safe. The defendant, although repeatedly notified of the defective condition of the bridge in question, neglected and refused to repair the same. At the conclusion of the plaintiff's testimony, on motion of defendant's counsel the court granted a nonsuit, to which ruling the plaintiff excepts. It appears from the plaintiff's testimony that the house in which she had been living for some time before the injury occurred was a very short distance from the crossing and the bridge where she was hurt, viz., about thirty or forty feet. She had been using the bridge in passing over it daily, and for some time before her injury was thoroughly familiar with its condition. She herself had made complaint to the railway employees about the dangerous condition of the bridge, and asked that it be repaired. She described in her testimony the condition of the bridge, its defective parts, and the dangers from using it, which she knew of before she was hurt. For instance, in speaking

of the planks, she says: "They were weak, very weak, and would break and move at any jostle, at any weight." In another connection she says: "The condition of the ·bridge has been in a dilapidated condition for some time, and I have urged Mr. Franklin two or three or four weeks before I was hurt to have the crossings fixed. They were in a very dilapidated condition. The planks had grown thin underneath, and were liable to break at any time with your weight." While the petition alleged that she had no other way to go from her house to the public highway except over this crossing, there was a failure to sustain this by the proof, for it appeared from the plaintiff's own evidence that there was a way through her field, though some further than the route over the crossing, to go to the highway. While she testified that wagons could not be well driven around this way on account of growing crops, yet it appeared from her testimony that there was a pathway. Her injury occurred in December, after, no doubt, crops had been gathered, and, besides, she was hurt while walking across, and was not attempting to use a vehicle. The testimony developed no emergency or special necessity why she should, at the time she was injured, have gone to the public highway, and as for that matter, even if such necessity had existed, why she could not have pursued a perfectly safe route in another direction, which did not involve crossing the bridge.

The question has been ably argued by counsel in the case, as to whether or not, under the facts alleged and testified to, the private way mentioned is such a one as could be recognized as a private way established by law. It is contended by counsel for defendant in error that it is not, and that therefore this defendant is not under any obligation to keep in repair the bridge and crossing on this way. The defendant, having purchased at judicial sale, it is claimed is not bound to keep in repair roads other than those established pursuant to law and entered on the road book. Under the view we take of the case, however, it is unnecessary to enter into a discussion or determination of this interesting point. Conceding, for the sake of the argument, that such an obligation was upon the defendant, yet under the evidence itself an insurmountable ob-

stacle in the way of plaintiff's recovery in this case is that the proof upon which she relies shows that she could have avoided the injury of which she complains, by the exercise of ordinary care and diligence. There can be no doubt about the soundness of the principle, that if this injury was caused by the plaintiff's own negligence, or if she could have avoided the same by the exercise of ordinary care and diligence, she can not recover. This principle constitutes a valid defense in all actions of this kind, whether against an individual, a county, a municipality, or a corporation. *County of Macon* v. *Chapman*, 74 *Ga.* 107; *Massey* v. *Columbus*, 75 *Ga.* 658. There is nothing in the opinion of Justice Lumpkin in the case of *Samples* v. *Atlanta*, 95 *Ga.* 110, at all in conflict with our views in this case. It was simply decided that, "Although a traveler may know that because of the defective construction of a public bridge in a city there is some danger in driving over it, still he may recover from the city for injuries sustained in so doing, if it clearly appears that the danger was not obviously of such a character that driving over the bridge would necessarily amount to a want of ordinary care and diligence, and if it also appears that in driving over the bridge the plaintiff did in fact observe such care and diligence." In the opinion in that case it appears that the only opportunity the plaintiff had of knowing the condition of the bridge was the fact that he crossed the bridge with his wagon the day before. The principle laid down by Justice Lumpkin in his opinion shows under what circumstances as a matter of law a defendant in such a case would be relieved from liability on account of negligence by the plaintiff in not using due care and caution, and we think it exactly fits the facts in this case. It is true it does not follow that because a traveler does know, for instance, that a public highway is dangerous for traveling in a given place, it is necessarily conclusive proof of negligence on his part if he undertakes to go over such portion of the highway. A distinction might be drawn between what would be negligence on the part of such a traveler on a public highway in the country, and the use by an owner of his own private way. But even if there was none, the facts of this case do not present such

defects in the bridge as are merely small and trivial, and, while evidently of some danger to one passing, yet not so apparently dangerous as to impress any prudent man with the idea that he would be incurring an unusual risk in undertaking to pass over. If it is possible for testimony to make the danger of such a structure obvious and exceedingly great to even a casual observer, the testimony of the plaintiff presents such an instance. She knew not only of the bad and defective condition of the bridge, but she knew that the planks were not nailed, that there were large cracks between them, and that some of them were rotten and liable to break at any time of their own weight. Besides this, she could have reached her destination very readily without going over the bridge at all;. and even if there was a necessity for her to go to the public highway at the time she did, common prudence would have demanded that she take the safer, though perhaps the more circuitous route, rather than the dangerous and more direct one. Says Justice Lumpkin in the case above cited, on page 113, "Where the danger is exceedingly small and trivial, it may not be at all negligent to disregard it; where it is exceedingly great and obvious, it would be negligence per se to incur the hazard of being injured by it." After a thorough discussion of the law bearing upon the subject, he reaches, in the same case on page 119, the following conclusion: "The law is plain and clear, and in a nutshell is as follows: If the danger arising from a defect in a bridge, or other portion of the highway within the limits of a city, is obviously of such a character that no person, in the exercise of ordinary prudence, would attempt to pass over the same — or, in other words, if such an attempt would, of itself, plainly and unequivocally amount to a want of ordinary care and diligence, — the court may so instruct the jury as matter of law." There is no question, then, about the principle of law governing such cases, and its application must depend upon the facts of each particular case. We think there is no doubt that the rule was properly applied in this case when the court sustained the defendant's motion for a nonsuit.

*Judgment affirmed.    All the Justices concurring.*