## CHALKLEY *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. Where, in a suit against a railway company, the question whether the engineer of a running train, when between a blow-post and a public crossing, blew the whistle of the locomotive in such a manner as to produce an unusual and unnecessary noise, and thereby frightened a team of mules and caused them to run away and kill the plaintiff's husband, is one of the issues in the case, it is erroneous to charge the jury, without qualification, "that the plaintiff in the case could not recover if the blowing of the whistle was at any point within four hundred yards of the crossing, and if that alone caused the mules to become frightened and kill her husband." And when the jury are not, elsewhere in the charge, clearly instructed that the defendant company would be liable although the blowing of the whistle was at a place where the law required it to be sounded, if it was blown in a way which produced an unnecessary and unusual noise, and the unnecessary and unusual character of the noise caused the fright of the mules and the injury complained of, such erroneous charge is, in the event of a verdict for the defendant, cause for a new trial.

2. An instruction of the court upon a given question in the case is not erroneous because it does not conform to an alleged theory of one of the parties, when such theory, under the evidence submitted, is itself erroneous.

3. When, in a case of this character, the court clearly and fully instructed the jury that the law required the blow-post to be placed at a point four hundred yards distant from the crossing, and that, if there was no blow-post at such point, it was the duty of the engineer of a train approaching the crossing to blow the whistle there anyhow, the fact that the court charged the jury that if they found "that there were two tracks and they were very close to each other, and both belonged to the defendant company, if the blow-post was erected upon either or near it, or so near as to be seen readily by the engineer in passing, and in fact that blow-post was used as the blow-post for this line, that would be a sufficient compliance with the statute," was not cause for a new trial.

4. There was no error in leaving to the jury the determination of the meaning of the expression "just crossed over," as applied to persons who have passed over a railroad crossing in advance of an approaching train.

Argued June 10, — Decided July 14, 1904.

Action for damages.  Before Judge Reagan.  Spalding superior court.   October 24, 1903.

*R. T. Daniel* and *M. W. Beck*, for plaintiff.
*Hall & Cleveland* and *R. L. Berner,* for defendant.

FISH, P. J.    The plaintiff's husband was killed by being thrown from a wagon, in consequence of the mules which were drawing the same becoming frightened and running away.    She sued the defendant railroad company for damages, alleging that the fright of the mules and the death of her husband, resulting therefrom, were caused by the "blowing and tooting of a whistle of an engine" of a train of the defendant, and that such "blowing and tooting," at the time and place described, were "unnecessary and uncalled for," and negligence on the part of the defendant. Upon the trial of the case the jury found a verdict in favor of the defendant. . The plaintiff moved for a new trial, which was refused and she excepted.

1. It appeared from the evidence in the case that the blowing of the whistle, which was alleged to have caused the fright of the animals, was between a blow-post, or the point where one should have been located, and a public crossing, while the train was approaching such crossing; and one of the grounds of the motion was that the court erred in charging the jury, "that the plaintiff in the case could not recover if the blowing of the whistle was at any point within four hundred yards of the crossing, and if that alone caused the mules to become frightened and kill her husband."    One of the assignments of error upon this instruction is, that it was equivalent to directing the jury to find for the defendant, if the blowing was between the blow-post and the crossing, whether that blowing was unnecessary and unusual or not.    The evidence shows that it was absolutely necessary for the whistle to be blown at the time and place in question, in order to comply with the imperative mandate of the statute; and the plaintiff could not recover unless it was shown that the whistle was blown so as to produce an unnecessary and unusual noise, and that the unnecessary and unusual character of the noise was what caused the mules to become frightened.    That it is not only the right but also the duty of the engineer to blow the whistle of a train approaching a public crossing, between the blow-post

and the crossing, is too clear for discussion; and there was no negligence in blowing the whistle, unless it consisted in the manner in which it was done. Construing the petition most strongly against the pleader, we do not think it charges that the noise made by the blowing of the whistle was unusual and unnecessary or even that the whistle was blown in an unusual and unnecessary manner; it certainly does not do so in terms, and we do not think that it does so in effect. The only real act of negligence clearly and distinctly charged is, "the unnecessary and uncalled for blowing" and continued blowing of the whistle at the time and place in question. The adjectives "reckless" and "careless" used in several paragraphs of the petition, to characterize the blowing, might well have been employed simply in the sense that any sounding of the whistle at a time and place when, as charged by the petition, its blowing was "unnecessary and uncalled for," was "reckless" and "careless." Nowhere in the petition is the noise made by the whistle, or even the manner in which it was blown, described as being unusual. But as the case was evidently treated and tried by both of the parties and the court upon the theory, stated by the court to the jury, that the petition alleged that "the engineer in charge of the train blew the whistle a number of times, blowing it in an unusual and unnecessary manner, and that it frightened the mules attached to the wagon on which the [plaintiff's] husband was riding, causing them to run away and throw him out and kill him," we shall deal with the charge excepted to as if this were a proper construction of the petition. So construing the petition, we think this charge was erroneous. Where a railroad company's servants make unusual noises in the operation of one of its trains, and there is no necessity for the making of such noises, the company is liable for injuries resulting in consequence thereof. *Georgia R. Co.* v. *Thomas*, 73 *Ga.* 350; *Georgia R. Co.* v. *Carr*, Ib. 557; *Hill* v. *Rome St. R. Co.*, 101 *Ga.* 66; *Southern R. Co.* v. *Pool*, 108 *Ga.* 808. But unless it is shown that the noise made was unusual and unnecessary at the time when and place where it was made, the railroad company will not be liable in damages to the person injured, even though such noise was the proximate cause of the injury. *Coleman* v. *Wrightsville & Tennille R. Co.*, 114 *Ga.* 386; *Central Ry. Co.* v. *Black*, Ib. 389. The charge

complained of, standing alone, eliminated the idea that the plaintiff could recover, even though the blowing of the whistle, alleged to have caused the fright of the mules and the resulting death of the plaintiff's husband, was between the blow-post and the public crossing, if the noise made by the whistle was both unusual and unnecessary and this was the proximate cause of his death; and we do not think that this idea was, elsewhere in the charge, so clearly presented to the jury as to cure this defect in the particular instruction now under consideration.    While, in our opinion, under the evidence, the plaintiff's case was quite weak and the defense thereto very strong, yet we can not say that a verdict for the plaintiff would have been without any evidence to support it, and we therefore think this error in the charge required the grant of a new trial.

2. Another ground of the motion for a new trial was, that the court erred in charging the jury as follows:  "If he [the engineer] failed to blow at the whistle post, or at a point four hundred yards from the public crossing, if he did not blow it there, if he failed to blow it at that point, still the plaintiff would not have a right of action unless that was the direct and proximate cause of her husband's death."    As we have said, the only real negligence distinctly alleged in the petition was "the unnecessary and uncalled for blowing and tooting of the whistle" of the locomotive at the time and place in question.    It is true that the petition did allege that there was no blow-post four hundred yards from the crossing "on the side towards which" the train was approaching the crossing, to indicate to the engineer where to blow, and that the defendant company was negligent and careless in failing to place a blow-post there, and that its "carelessness and negligence in failing to place said blow-post on said line of road as required by law and the not blowing of said engine as required by law caused the accident which resulted in the death of . . petitioner's husband."    But it is perfectly clear that, relatively to the plaintiff's husband, a mere failure to erect a blow-post where one ought to be was not negligence.    It could make no difference to him whether there was a blow-post there or not, if the engineer sounded the whistle at the proper point, and if, relatively to him, it was negligence not to blow the whistle there and it was not blown there, it was immaterial whether there was a post there

or not. It was not charged that the engineer failed to blow the whistle four hundred yards from the public crossing, unless the vague, uncertain, and indefinite phrase, "the not blowing of said engine as required by law," means "not blowing" at the point where there should have been a blow-post. Whether it means this, or that the whistle was not blown continuously from the blow-post locality to the crossing, as the law requires, or (in accordance with the theory insisted upon in the exception dealt with above) that the blowing was in a manner to produce an unusual and unnecessary noise, we are unable to determine. One thing is perfectly apparent, and that is, that there is no certain allegation here that the whistle was not blown at a point four hundred yards from the crossing. This charge is alleged to have been erroneous, " because it instructed the jury contrary to the plaintiff's theory, . . that the failure to blow at the blow-post, coupled with the fact that they did blow at the wrong place, where there was no necessity for it, was the direct cause of the death of the plaintiff's husband, and it inferred that because the engineer had the right to blow the whistle at the blow-post that this gave him the right to blow at any place between the blow-post and the crossing." If this was the plaintiff's theory, it was not apparent from the petition, and even if it were, it was an erroneous theory. The theory that failure to blow at the blow-post, *coupled with blowing at the wrong place,* where there was no necessity to sound the whistle, was the proximate cause of the casualty, was not applicable to the facts of this case. The blowing which is alleged to have caused the fright of the mules was not at a wrong place, but was where the law required the whistle to be blown, for it was between the blow-post and the crossing. The law not only "gave" the engineer the right to blow the whistle at any point between the blow-post and the crossing, but required him to do it. Another assignment of error upon this charge is, because "in this connection the court failed to charge the jury that it was the duty of the engineer, in accordance with the statute, to blow at the blow-post and continue to blow, and check and continue to check the train until it arrived at the crossing." This assignment of error runs counter to the other, and is opposed to the theory that the blowing of the whistle was at a place where it was not necessary to blow it. The court did, "in this connection," and in

the sentence immediately preceding the instruction excepted to, charge the jury that it was the duty of the engineer, under the law, to blow the whistle " and to continue to blow it the whole distance of four hundred yards from the whistle post, or at a point where the whistle post should be, to the public crossing." There was nothing in the petition which even faintly suggested that there was a failure to comply with the requirement of the statute as to checking the speed of the train, though the court, elsewhere in the charge, correctly stated the law upon the subject.

3. It is alleged in one ground of the motion that the court erred in charging the jury as follows :    " On the question of the erection of the blow-post,  . .   I charge you, if you believe there were two tracks and they were very close to each other, and both belonged to the defendant company, if the blow-post was erected on either or near it, or so near as to be seen readily by the engineer in passing, and in fact that blow-post was used as the blow-post for this line, that would be a sufficient compliance with the statute."    In view of the clear and full instruction by the court that the law required the blow-post to be placed at a point four hundred yards distant from the crossing, and that if there was no post there, it was the duty of the engineer to blow the whistle there anyhow, we see no error in the charge here complained of. The jury could not have understood from it that a blow-post less than four hundred yards from the crossing on the line on which the train was running could be used for that line in compliance with the law.    Besides, as we have already said, a mere failure to erect a blow-post is not negligence relatively to a case of this kind.    The fact of such failure might be a circumstance admissible in evidence, to be considered by the jury, along with other evidence, in determining whether or not the whistle was sounded four hundred yards from the crossing, but on the question of negligence it is only the law requiring the whistle to be blown at this point, and not the law requiring the company to erect a blow-post there, which is material.

4. The court, after charging the jury that the requirement of the law in reference to blowing the whistle, etc., when a locomotive is approaching a public crossing, applies to persons who " have just crossed over it," continued the instruction as follows: " Now as to the term ' just crossed over,' it is a question for the

jury. The court does not undertake to charge the jury what particular number of feet or yards a person would have to. get away from the crossing, after crossing it, in order to constitute him a person who had just passed over ; but it is a question for the jury to determine in each case." This is alleged to have been erroneous, " because the statute fixes the number of yards in which a person is protected after having crossed, viz. 400 yards." This contention is certainly novel, and is as unsound as novel. There is nothing whatever in the statute to support it. A further assignment of error is, that the court ought not to have left to the jury the meaning of the expression " just crossed over," as this was submitting to them "a proposition of law which the court should have interpreted and explained." We think it was submitting to the jury a question of fact which it was their peculiar province to determine. The charge as given was not erroneous; and if any fuller instruction was desired by counsel for the plaintiff, they should have requested it.

The use of the word " accident," in a portion of the charge, in designating the occurrence which resulted in the death of the plaintiff's husband, is alleged to have been erroneous. We do not see how the jury could have been misled by the word, used in the connection in which the court employed it; and as the plaintiff used precisely the same word, for the same purpose, in her petition, she can hardly complain of its use by the court.

*Judgment reversed. All the Justices concur.*