## SOUTHERN RAILWAY COMPANY *v.* HOGAN.

1. One who knowingly and voluntarily takes a risk of injury to his person and property, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety and that of his property, can not hold another liable for damages from injuries thus occasioned.
2. Applying this rule to the testimony of the plaintiff and that of the other witnesses introduced in his behalf, and considering all the testimony in the light most favorable to him, a verdict in his favor was without evidence to support it.

Submitted January 14,—Decided July 24, 1908.

Action for damages. Before Judge Kimsey. Habersham superior court. February 7, 1907.

Hogan brought two suits against the Southern Railway Company, for damages, one being for personal injuries to himself, and the other for injuries to his wagon, harness, and team, all caused by the same acts of alleged negligence of the defendant. The cases were consolidated and tried as one. A verdict was rendered for the plaintiff, and a writ of error sued out by the defendant brings under review the overruling of its motion for a new trial. According to plaintiff's testimony and that of other witnesses introduced by him, the facts, so far as are here material, were as follows: Plaintiff was shipping wood over defendant's road from one of its stations, and had requested the station agent, Grant, to have a car for the wood placed near the end of a side-track. Grant promised to do this, but the car was not left at that place, but on the side-track nearly opposite the depot and east of the main line. Prior to the day plaintiff and his property were injured, he had hauled eighteen loads of wood to be shipped, and placed it on an embankment opposite to and east of the point where the car in question was left the afternoon before. It was perfectly safe to load the car from the east, or embankment, side, but required more time than to load from the west side, where the track was level with the ground. The distance between the main line and the side-track east of it was estimated by plaintiff to be five or six steps, wide enough, as he testified, to turn a wagon in without driving over either track; but according to the testimony of several of his witnesses, the space was about eight or ten feet wide, and too narrow to turn a wagon in without driving on the tracks.

Plaintiff's witnesses, who testified on the point, all stated that it was obviously dangerous to drive a team between the tracks and to the door of the car that was to be loaded, as trains frequently passed over the main line, and would frighten almost any team standing between the tracks. Plaintiff himself testified that he didn't much like to drive in there, as it would be dangerous, if he did not get warnings and a train should pass before he could get the team out; that he knew it was a risk he was taking when he drove in there; that before driving in he always inquired of the station agent, or of one or the other of two young men, who it was shown by the evidence of plaintiff's witnesses were studying telegraphy under the agent at the depot, and delivering and receiving freight for the agent, in his absence, how long it would be before a train was due to pass; that on the day that he was injured, and previous to the occurrence in question, he had hauled five loads and loaded them on the car from between the tracks; that on the morning of the day when he was injured, before driving in between the tracks, he had asked Thompson, one of the young men, how long it would be before a train would pass, and, upon the information that he had received, had driven in, but it turned out that Thompson was mistaken in his estimate of the time that would elapse before the coming of a train, as one came by sooner than Thompson said it would and frightened a mule of plaintiff's team, but he and the driver succeeded in holding it; and that before driving in with the last load, he asked Thompson "if the train was due, and he said he supposed not for ten or fifteen minutes," to which plaintiff replied, "If it don't come before ten minutes, I can get the load off and out." Neither said anything more. Plaintiff thought he and his driver could unload in five minutes, but his driver, Burrell, who was helping him, thought it would take them about ten minutes to unload. Burrell testified that he told plaintiff that he didn't like to load from between the tracks, that it was safer to load on the other side of the car, from the embankment, and that plaintiff replied "he didn't have time to handle it so much." Burrell further testified that plaintiff had been told by his son, that morning, that it would be better to load from the top of the cut, and the son "said something to him about its being dangerous." Plaintiff testified that "It was a little bit dangerous" to load from between the tracks, but that he didn't think

"it was dangerous with proper warning," and that "it was easier to unload the wood from that side than it was to carry it up on the hill and unload it." After plaintiff had made the inquiry of Thompson, Burrell drove between the tracks, to the door of the car, and he and the plaintiff began throwing the wood from the wagon into the car, and when they had unloaded about two thirds of it, a fast train, not scheduled to stop at that station, approached, running about fifty miles an hour. It blew no signal whistle for the station, nor blow-post whistle for the public crossing, a short distance north of the depot. Plaintiff first saw it when it was about seventy-five or one hundred yards away, coming out of a cut and around a curve, and too late to get the team out. The whistle blew when about seventy-five yards away. The mule, which was being held by Burrell, became frightened and, by rearing and plunging in its efforts to get away, backed the wagon on the main line, causing it to be struck and the team killed and the plaintiff injured. There was nothing in the evidence submitted by the defendant that tended to aid the plaintiff, and it is unnecessary to set forth any of it.

*John J. Strickland,* for plaintiff in error.

*Arnold & Arnold* and *Thompson & Bell,* contra.

FISH, C. J. (After stating the foregoing facts.) Under the evidence in this case, viewed in the light most favorable to the plaintiff, we think it clear that a verdict in his behalf was wholly unwarranted. That no person can recover damages from a railroad company for injuries to himself or his property, where the same are caused by his own negligence, or where by ordinary care he could have avoided the consequences to himself caused by the company's negligence, are familiar declarations of our Civil Code (§§2322, 3830) which have been applied by this court in a great number of cases. We will refer to only a few of them, which we consider to be directly in point here. In *Samples* v. *Atlanta,* 95 *Ga.* 110, at page 112 (22 S. E. 136), Justice Lumpkin refers to "the well-known rule of law that one who voluntarily attempts a rash, imprudent, and dangerous undertaking is to be presumed to have assumed the risk incident thereto, and can not afterwards complain if he is injured." So, in *City of Columbus* v. *Griggs;* 113 *Ga.* 597 (38 S. E. 953, 84 Am. St. R. 257), it was held: "One who knowingly and voluntarily takes a risk of physical in-

jury the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, can not hold another liable for damages resulting from a hurt thus occasioned, although the same may be in part attributable to the latter's negligence." It was said in the opinion: "Certainly a man can not heedlessly rush into grave peril of the existence of which he is perfectly aware, and then hold any one else, whether negligent or not, responsible for the consequences." Again, in *Western & Atlantic R. Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802), Justice Cobb, delivering the opinion, at page 712, said: "If at the time of the injury an ordinarily prudent person, in the exercise of that degree of care and caution which such a person generally uses, would have reasonably apprehended that the defendant might be negligent at the time when and place where the injury occurred, and, so apprehending the probability of the existence of such negligence, could have taken steps to prevent the injury, then the person injured can not recover, if he failed to exercise that degree of care and caution usually exercised by an ordinarily prudent person to ascertain whether the negligence which might have been reasonably apprehended really existed." Citing a number of cases. And further the learned Justice said: "If there is anything present at the time and place of the injury which would cause an ordinarily prudent person to reasonably apprehend the probability, even if not the possibility, of danger to him in doing an act which he is about to perform, then he must take such steps as an ordinarily prudent person would take to ascertain whether such danger exists, as well as to avoid the consequences of the same after its existence is ascertained; and if he fails to do this, and is injured, he will not be allowed to recover, if by taking proper precautions he could have avoided the consequences of the negligence of the person inflicting the injury." Another case directly in point is *Mansfield* v. *Richardson,* 118 *Ga.* 250 (45 S. E. 269), wherein it was held: "In cases of personal injuries, the plaintiff as a conscious human agent is bound to exercise ordinary care to avoid the consequences of the defendant's negligence, by remaining away, going away, or getting out of the way of a probable or known danger." And that "He can 'avoid' danger by refraining from going into what he knows is an unsafe place." On the same line are, *May*

v. *Central R. Co.*, 80 *Ga.* 363 (4 S. E. 330) ; *Atlanta & Charlotte R. Co.* v. *Leach,* 91 *Ga.* 419 (17 S. E. 619, 44 Am. St. R. 47) ; *Evans* v. *Charleston R. Co.,* 108 *Ga.* 270 (33 S. E. 901) ; *Hicks* v. *Georgia Southern R. Co.,* 108 *Ga.* 304 (32 S. E. 880) ; *Steele* v. *Central R. Co.,* 123 *Ga.* 237 (51 S. E. 438), and cases cited.

As to the other features of the present case, the rulings made in the following cases are controlling. In *Coleman* v. *Wrightsville R. Co.,* 114 *Ga.* 386 (40 S. E. 247), it was held: "A railroad company is under no duty to a person unloading merchandise from a car on a side-track to a wagon, to which a horse is hitched, to comply with the requirements of the Civil Code, §2224, respecting the giving of signals and checking the speed of the train before reaching a public crossing." And in *Chalkley* v. *Central Ry. Co.,* 120 *Ga.* 683 (48 S. E. 194), the well-settled rule was stated, that "Where a railroad company's servants make unusual noises in the operation of one of its trains, and there is no necessity for the making of such noises, the company is liable for injuries resulting in consequence thereof. [Citing cases.] But unless it is shown that the noise made was unusual and unnecessary at the time when and place where it was made, the railroad company will not be liable in damages to the person injured, even though such noise was the proximate cause of the injury." Citing cases. In the present case, the plaintiff attempted a rash, imprudent, and dangerous undertaking. He admitted on the trial that he knew that it was risky, and that it was dangerous if he failed to get the usual warnings of the approach of the train. He knew it was perfectly safe to load from the other side, and his driver informed him that he preferred to load from the other side because of the danger of going between the tracks, and testified that plaintiff's son had suggested to him to load from the other side. Plaintiff's witnesses testified that driving between the tracks to load was obviously dangerous to any one. Plaintiff must have known that, even if the opinion which the young man in the office gave him as to the length of time before another train would pass should be correct, he would have barely time before its arrival in which to drive in between the tracks, transfer the wood from his wagon to the car, and drive his team out to a place of safety. Besides, he had reason to apprehend that the supposition of his informant as to such time might prove to be unreliable, as he had, on the same day,

given him wrong information as to the time when the next train would arrive, by reason of which plaintiff had been caught, upon the arrival of the train, in the same close place; and he knew, from his experience then, that it might be impossible to control his mule, if the team were again there when a train passed by. From this very recent experience, he ought to have known that he could neither rely upon the supposition given him as to the time before another train would arrive, nor upon his ability to control his mule in case the train should pass while the wagon and team were between the tracks. According to plaintiff's own testimony, there was no necessity whatever for his taking the risk that he did; for he testified that he drove in and loaded from between the tracks because it was easier for him to load from there and he could save time by doing so. Failure of the railroad company to comply with the statute as to signals, etc., in reference to public crossings, was not negligence relatively to the plaintiff, and there was no evidence that any unusual and unnecessary noise was made by the train which frightened his mule, whose efforts to run away caused the train to come in contact with the wagon and team, resulting in the damages for which the actions were brought. The plaintiff having knowingly and voluntarily taken the risk of so obvious a danger, and the act of taking it being so manifestly a failure to exercise ordinary care and diligence for his own safety and that of his property, he could not hold the railroad company liable for the resulting damages, and the court should have granted a new trial on the general ground that the verdict was without evidence to support it. There are many grounds in the motion for a new trial, but it is unnecessary to deal with the others specifically.

*Judgment reversed. All the Justices concur.*