## MOORE *v.* SOUTHERN RAILWAY COMPANY.

At the conclusion of the testimony introduced by the plaintiff there was no evidence before the court and jury that would have authorized a recovery against the defendant, and the court did not err in granting a nonsuit.

SEPTEMBER 26, 1911.

Action for damages. Before Judge Reagan. Spalding superior court. January 18, 1910.

*R. R. Arnold* and *T. E. Patterson,* for plaintiff.

*C. E. Battle* and *Howell Hollis,* for defendant.

BECK, J. The plaintiff, Mrs. Lou Moore, brought suit against the Southern Railway Company to recover for the killing of her son, Travis Moore, near the Griffin Mills, in the city limits of Griffin, about 9 o'clock at night in the month of August, 1908. It was alleged, that the decedent was upon the track of the defendant, and was run upon and over by an engine and train of the defendant running at the rate of 40 miles an hour; that this was a negligent and reckless rate of speed under the circumstances; that the presence of the decedent upon the track was discovered by the engineer for a distance of 400 yards away, but, notwithstanding his knowledge of this fact, the engineer failed to exercise ordinary care to avoid striking the decedent; that by the exercise of such care he could have stopped the train before reaching him; and that the employees of the defendant failed to give proper signals of approach by bell and whistle. The place at which Moore was killed was alleged to have been in a "district thickly populated; there is a path and footway across the track at this point; a public road runs parallel to the defendant railway company's track on both sides, and there is a path from one side to the other, used daily by hundreds of people in going to and from the church and the various settlements on both sides of the railroad." Upon the trial of the case, at the conclusion of the evidence offered by the plaintiff, the court granted a nonsuit; and the plaintiff excepted.

One of the witnesses, the father of the decedent, testified: "I went to look at the place where he was killed. It was about in the center of the middle path. There were three paths. He was sitting down about on one of the three paths coming across there, on the end of two cross-ties. Seemed to be there where they knocked him from, right in front of the church door. . . I saw the headlight of the engine. I did not hear it coming. I could see down the track from Experiment towards Griffin to the point where he was said to have been killed. My son was prevented from seeing the train coming along, by bushes and weeds as high as your head, that had grown up by the side of the railroad track. They might have prevented the engineer from seeing him. . .

My son was sitting in front of the church door.   .   .   His foot signs were where he was sitting on the cross-ties. That is where they knocked him off in the bushes.   .   .   I don't know how long he had been sitting there.   .   .   There were three of the paths that crossed there. They do not make a connection and come together and go down the bank to the railroad. They are fifteen to twenty feet apart where you go down. The paths were about ten feet apart at the place he was. He was between the middle path and the left-hand path; about ten feet from the left-hand path. He had been sitting near the center path, a little to the left of it.   .   . He must have been sitting on the cross-ties with his back to the track, leaning over. The church was about thirty or forty feet from the track. At the time of the accident that clump of bushes was between there and the church. That is where he was hit, near that clump of bushes in front of the church. They are between the church and the railroad track. He was sitting on the cross-ties, sitting with his face towards the church." The only other witness who testified was John Noland, who testified, in part, as follows: "I don't know whether he [the engineer] seen him or not. He might have seen him if he had looked for him. The fellow that was killed could have seen the engine, if he had looked at all. I believe he could. There was a headlight on the engine. If he was on the track the light of the headlight was on him. I stated that I heard a man on the engine say he saw something on the cross-ties stooping over. He thought it was a dog. He was sitting on the cross-ties. He said he saw the object when he was up at the Griffin Mill. That was between three and four hundred yards away. I saw the party who made the statement on the engine. He came down the track on the east side. I was then on that side. The bushes were as close to the track as to this wall here. The embankment is low, and bushes hung over. Not close enough to be touched by the train."

The inference from this testimony is that the decedent, at the time of his death, was not only a trespasser upon the track of the defendant railway company, but was guilty of gross neglect and of an entire failure to exercise any degree of care or caution for his own safety. Under these circumstances, we do not think, taking the most favorable view of the testimony for the plaintiff, that she was entitled to a recovery. Under no case decided by this court, to

which our attention has been called, has it been held that a recovery could be had for the death of a trespasser upon the track of a railway company, who, at the time of the homicide, was guilty of carelessness and negligence so gross as was shown on the part of the decedent in this case. The decedent was evidently sitting upon the end of the cross-ties when he was struck by the engine; it was night. While it is true that one of the witnesses testified that the engineer said he saw him at a distance of several hundred yards ahead, but thought it was a dog, there is nothing in the evidence to show that the engineer was aware of the presence of a man upon the track at the point where the decedent was struck, or had any knowledge of his peril. Under the evidence for the plaintiff, the decedent was on the end of the cross-ties, sitting in such a position as to be struck by the passing locomotive; and the character of the object at the end of the cross-ties was not only obscured on account of the darkness, but the uncontroverted testimony is that there were "weeds and bushes" at the point where the decedent was sitting; and one witness, the father, testified that these weeds and bushes were as high as a man's head. It is not suggested that the train was not running on schedule time. The headlight was burn- ing. The rate of speed was only twenty to twenty-five miles per hour. There is no suggestion that other trains were passing which would have rendered it impossible or difficult for one on the track to hear the approaching train. We can not conceive of a case more clearly showing that death came to one as a result of his own voluntary exposure to peril than the instant case. In the case of *Southern Railway Co. v. Hogan,* 131 *Ga.* 157 (62 S. E. 64), it was said: "One who knowingly and voluntarily takes a risk of injury to his person and property, the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety and that of his property, can not hold another liable for damages from injuries thus occasioned." The quotation given contains the ruling made in the case as announced in the first headnote. And in the conclusion of the opinion it was said: "The plaintiff having knowingly and voluntarily taken the risk of so obvious a danger, and the act of taking it being so manifestly a failure to exercise ordinary care and diligence for his own safety and that of his property, he could not hold the railroad company liable for the resulting damages,

and the court should have granted a new trial on the general ground that the verdict was without evidence to support it." In the case of *Western & Atlantic R. Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802), it was said: "If at the time of the injury an ordinarily prudent person, in the exercise of that degree of care and caution which such a person generally uses, would have reasonably apprehended that the defendant might be negligent at the time and place where the injury occurred, and, so apprehending the probability of the existence of such negligence, could have taken steps to prevent the injury, then the person injured can not recover, if he failed to exercise that degree of care and caution usually exercised by an ordinarily prudent person to ascertain whether the negligence which might have been reasonably apprehended existed." After citing a number of cases, Mr. Justice Cobb continued: "If there is anything present at the time and place of the injury which would cause an ordinarily prudent person to reasonably apprehend the probability, even if not the possibility, of danger to him in doing an act which he is about to perform, then he must take such steps as an ordinarily prudent person would take to ascertain whether such danger exists, as well as to avoid the consequences of the same after its existence is ascertained; and if he fails to do this, and is injured, he will not be allowed to recover, if by taking proper precautions he could have avoided the consequences of the negligence of the person inflicting the injury." In the case of *Southern Railway Co.* v. *Hogan,* supra, Chief Justice Fish, delivering the opinion, on page 160, said: "Another case directly in point is *Mansfield* v. *Richardson,* 118 *Ga.* 250 (45 S. E. 269), wherein it was held: 'In cases of personal injuries, the plaintiff as a conscious human agent is bound to exercise ordinary care to avoid the consequences of the defendant's negligence, by remaining away, going away, or getting out of the way of a probable or known danger.' And that 'He can avoid danger by refraining from going into what he knows is an unsafe place.' On the same line are, *May* v. *Central R. Co.,* 80 *Ga.* 363 (4 S. E. 330); *Atlanta & Charlotte R. Co.* v. *Leach,* 91 *Ga.* 419 (17 S. E. 619, 44 Am. St. R. 47); *Evans* v. *Charleston R. Co.,* 108 *Ga.* 270 (33 S. E. 901); *Hicks* v. *Georgia Southern R. Co.,* 108 *Ga.* 304 (32 S. E. 880); *Steele* v. *Central R. Co.,* 123 *Ga.* 237 (51 S. E. 438), and cases cited." Other cases are cited by Chief Justice Fish in the *Hogan* case, in addition to those

set forth in the extract quoted above. See, in this connection, the following cases: *Southwestern R. Co.* v. *Johnson*, 60 *Ga.* 667: *Savannah, Florida & Western Ry.* v. *Stewart*, 71 *Ga.* 427; *Parish* v. *Western & Atlantic R. Co.*, 102 *Ga.* 285 (29 S. E. 715, 40 L. R. A. 364). In the case of *Southwestern Railroad* v. *Hankerson*, 61 *Ga.* 114, it was said: "If one voluntarily becomes drunk, and consequently falls down, or lies down, in a state of insensibility on a railroad track, so that he is ·injured by a passing train, he can. not recover for injuries so received, even though there may have been contributory negligence on the part of employees of the road." The facts of that case render the rule peculiarly applicable to the case at bar. A full discussion of the questions analogous to the ones involved in this case are to be found in several of the cases cited, which render unnecessary any elaborate discussion here.

Under the law and the evidence the court ruled rightly in directing a nonsuit.

*Judgment affirmed. All the Justices concur.*