## MANSFIELD *et al. v.* RICHARDSON *et al.*

1. The owner of grain who hires the owner of machinery to thresh it is not bound to guard against the consequences of a defect in the machine until he knows or ought to know of danger of damage therefrom to himself or his property.
2. Under the Civil Code § 3830, the word "avoid" is of broad and comprehensive meaning.
3. In cases of personal injuries, the plaintiff as a conscious human agent is bound to exercise ordinary care to avoid the consequences of the defendant's negligence, by remaining away, going away, or getting out of the way of a probable or known danger; and if his duty requires him to remain in the presence of danger, he must exercise the ordinary care required of a prudent man under the particular circumstances.
4. The same principle applies in suits for injuries to property; but it being inert and unable to act for itself, the owner is not ordinarily called upon to take active steps to avoid the consequences of defendant's negligence until the danger is seen, or he knows that damage is likely to occur to his property as a result of some force or instrumentality under the control of the defendant.

Submitted May 6, — Decided June 30, 1903.

Action for damages.      Before Judge Holden.      Wilkes superior court.      August 30, 1902.

*B. S. Irvin* and *S. H. Hardeman,* for plaintiffs.
*William Wynne* and *Colley & Sims,* for defendants.

LAMAR, J.     Having cut and stacked their crop of wheat, the plaintiffs employed the defendants to thresh the grain with their portable steam thresher.     The work continued till the noon hour, when all parties left the field to go to dinner, and soon thereafter the stacks were found to be in flames.     This suit was brought for the value of the property destroyed.     Plaintiffs insisted that the engine was defective, as it had no ash-pan or other means to prevent fire from falling on the ground, catching in the stubble, and thence spreading to the grain; that the fire had been thus caused; that they had nothing to do with the location of the machine; knew nothing of its condition, and were under no duty to guard against fire.     The defendants insisted that they were not responsible for the fire; did not know how it had originated; that they exercised all reasonable care and diligence; that the engine was not defective, and if loss resulted to the plaintiffs it was without fault of the defendants.     In their evidence they contend that the engine was located at a place designated by plaintiffs; that the stubble under it was burned off; that the ground was made wet;

that the plaintiffs could have avoided the injury by the exercise of ordinary care ; that the person in charge of the engine preferred to have his dinner sent, and offered to remain on guard, but the plaintiffs insisted that all should leave at the dinner hour, so that all might return together and begin work at once. These contentions of the defendants were in turn denied by the plaintiffs. The judge charged : (a) "If the fire occurred by reason of defendants' negligence, and plaintiffs could have avoided the fire by the exercise of ordinary care and diligence, they can not recover." (b) "If the loss of grain was caused by defendants' failure to have an appliance under the furnace of the engine to catch the fire, and if this was a lack of ordinary care, the plaintiffs could not recover if they could have avoided that lack of ordinary care and diligence on the part of the defendants by the exercise of ordinary care on their part." The jury found for the defendants, and a motion for a new trial was overruled.

The defendants were not guarantors that no damage would be done by their engine, and they would only be held liable on proof of negligence. · The plaintiffs, in contracting to have this engine brought on their plantation, assumed the necessary risk which that involved, but they did not assume the risk of injury caused by its defective condition or by any negligence on the part of the defendants. Still they were bound to avoid the consequences of the defendants' negligence if they could do so by the exercise of ordinary care; for, although the Civil Code, § 3830, by its terms, applies to personal injuries, it is also applicable to suits for damages to property. *Ga. R. Co.* v. *Neely,* 56 *Ga.* 544; *S., F. & W. R. Co.* v. *Stewart,* 71 *Ga.* 447; *Miller* v. *Smythe,* 95 *Ga.* 288. The principle is the same in both classes of cases, but the details of its application are different. Where the cause of action is personal injuries, the plaintiff as a conscious and responsible human agent must act as the situation and ordinary care require. The great law of self-defense underlies the doctrine requiring a plaintiff to avoid danger. The word "avoid" is very broad and comprehensive, and it would be impossible to define exactly what the plaintiff shall do in any particular case. He can "avoid" danger by refraining from going into what he knows is an unsafe place. He can "avoid" it by going away from that which he knows or ought to know is dangerous. Or, again, he can avoid it by getting out of the way of danger

which approaches or is imminent. It frequently happens, however, that a person is engaged in a dangerous business, or is bound to remain near unsafe or dangerous machinery, or in proximity to a force which may occasion bodily harm. The fact that his duty to remain will not allow him to avoid these dangers by going out of their reach does not lessen his duty to avoid them by any other proper means in his power as a prudent man in the exercise of ordinary care.

But property is inert and can not act for itself, nor does the law require the owner to be active in its protection until the danger becomes active. Both law and good morals require the plaintiff to lessen his damage (Civil Code, § 3802), and to avoid the injury altogether where it can be done by the exercise of ordinary care. But he is not bound to anticipate that some one else will be negligent or injure his property. He is not required to guard against the possible results of defendant's act so long as it is uncertain whether that act will culminate in an injury to his property. When negligence becomes active, and a plaintiff knows it, he too must be active to avoid consequences which he now sees and knows to be impending. But as long as the defendant's force is quiescent, the plaintiff himself may remain quiescent. In the presence of a seen danger he must protect his goods, but he is not required to guard against a possible or contingent calamity. *W. & A. R. Co.* v. *Ferguson,* 113 *Ga.* 710.

Of course in every case, whether in suits for personal injuries or injury to property, it will be for the jury to determine whether the plaintiff as a prudent man ought to have taken steps to avoid the damage. Where the force or instrument likely to occasion injury is not in the immediate charge of the defendant, as in *Miller* v. *Smythe,* 95 *Ga.* 288; or where the plaintiff has better means of knowing and guarding against the impending danger than the defendant, prompter measures to avoid the danger will be required of the plaintiff than in cases where the defendant is in immediate control of that which threatens damage to the plaintiff's person or property.

At the request of defendants' counsel the court charged that "if the plaintiffs invited every one to dinner, and the fire occurred during the dinner hour and could have been prevented by leaving some one on guard during that time, and the failure of the plaintiffs to leave some one on guard was the want of ordinary care and

diligence on their part, they would not be entitled to recover, provided if they knew at the time there was no ash-pan or other appliance under the engine to catch the fire, and that this was a want of ordinary care and diligence on the part of the defendant." This charge was not full, and was calculated to mislead the jury, because it did not call attention to several material elements in fixing the rights of the parties. Upon whom was the duty of guarding against fire during the dinner hour? If on the defendants, did the plaintiffs prevent them from performing such duty? If the plaintiffs knew that there was no appliance under the engine to prevent the spread of fire, did they know that the want thereof was likely to result in the destruction of the grain? Did they know that leaving the engine without some one in charge would likely cause the destruction of the wheat stack, and with such knowledge insist on leaving the engine unguarded during their absence at dinner, and thus assume the risk? Did leaving the engine without some one in charge create such a known and apparent danger as to require the plaintiffs to take measures to protect their property? There should be a new trial, in which the jury should be instructed to consider these questions and render their verdict in accordance with their finding on these points.          *Judgment reversed. By five Justices.*