### SKIPPER, by next friend, *v.* SOUTHERN COTTON OIL CO.

The petition alleged, that the plaintiff properly used a lever intended to stop the machinery ; that because of a defect unknown to the plaintiff, but known to the defendant, the lever failed to catch, though apparently stopping the movement of the rolls ; that there was no sound to indicate that they were in motion, and they being covered with cotton, and it being apparently safe so to do, the plaintiff, in accordance with the usual practice and in the proper discharge of his duty, stepped upon the rolls, which were apparently motionless but were actually moving ; in consequence of which he was injured. These allegations charge negligence on the part of the company, without showing that the plaintiff was wanting in due care, and it was therefore error to sustain the demurrer.

Argued June 14, — Decided August 12, 1904.

Action for damages. Before Judge Adams. City court of Dublin. December 8, 1904.

Skipper, a minor, by his next friend sued the Southern Cotton Oil Company for damages on account of personal injuries. From his petition these facts appeared : He was employed by the defendant to sew heads in round bales of cotton at its ginnery. On the night of October 9, 1902, he was required by the superintendent of the ginnery to take charge of and operate a round-bale press, the regular pressman being absent. In the operation of this

press the lint-cotton is carried by an air draft from a hopper into the box of the press, and there compressed by revolving rollers, the movement of which is regulated by a lever. When the lint-cotton accumulates or blows out unduly, it is necessary to stop the rollers and replace the cotton in the hopper. While the plaintiff was engaged in the operation of the press, the lint-cotton blew out of the hopper and covered the rollers of the press, so that they were hidden from view. Seeing that something was wrong, he immediately grasped the lever, and, after operating it in such a manner as would ordinarily stop the press, and not being able to see the rollers, on account of the cotton, he stepped into the press for the purpose of stopping the flow of cotton from the hopper. It was the custom, whenever the lint blew out of the hopper too rapidly, to pull the lever on the hopper, operate the lever that regulated the rollers, stop the rollers, step on them, and stop the mouth of the hopper until the lint ceased to blow out; there was no other way provided for stopping the flow of lint. The lint so hid the rollers that the plaintiff could not see whether they were stopped; there was no noise that gave him warning that they were still moving, and there was no way by which he could know it, until he stepped on them. He relied on the lever doing its work properly and stopping them. After getting into the press he discovered that they were still in motion, but before he could step out of the press, though he tried to do so, the rollers caught his left foot, and mashed it and part of the leg so badly that amputation was rendered necessary. The petition alleged, that the injury was caused by the negligence of the defendant; that the plaintiff was free from fault, and that the defendant was negligent, in that the lever of the press did not stop the rollers, and in not warning the plaintiff in respect to latent defects in the machinery which were not known to him, and were known or should have been known to the defendant, "viz., that the lever could not be relied on to stop the rollers of the press." The plaintiff did not know of the defects in the machinery of the press and the dangers incident to its operation, and could not have known of such defects by the exercise of ordinary care. The defendant was negligent further in not furnishing lights necessary for the safe operation of the press. By amendment it was alleged that the superintendent removed from the press to another part

of the plant the lamp which gave the light to see how to operate the press, leaving the plaintiff with "an insufficient and obscure light," and "practically in the dark."

The defendant demurred on the grounds, that there was no cause of action, and that it appeared that the plaintiff could have avoided the injury by the exercise of ordinary care; and on various special grounds.   The plaintiff offered an amendment alleging that the superintendent was incompetent and was known to be so by the defendant; and amplifying the description of the machinery and of the defect in the lever.   This amendment was disallowed, "on the ground that there is nothing in the original petition of plaintiff, as already amended, to amend by, and because the same sets up a new and distinct cause of action."   The court then dismissed the petition.   The plaintiff excepted.

*Flynt & Milton, Hawkins & Weddington,* and *A. H. Odom,* for plaintiff.   *Dessau, Harris & Harris,* for defendant.

LAMAR, J.   The petition stresses the fact that the plaintiff was a minor and inexperienced; but that he was only nineteen years of age was immaterial.   The case is to be treated as though he had attained majority; for there is no suggestion that he was not chargeable with the duty of using due care, nor that he was incapable of appreciating the danger of stepping into the midst of moving machinery.   If the petition justified the defendant's contention that the plaintiff had thoughtlessly or recklessly stepped into a box in which he knew or ought to have known that the compressors were revolving, it is self-evident that he could not recover.   The master is not an insurer; least of all is he an insurer against the consequences of careless or reckless conduct on the part of an employee.   A careful reading of the petition will show that there were very many irrelevant and immaterial facts stated in reference to the situation of the machine, incompetency and misconduct of the superintendent, and other matters which by themselves have here no tendency to impose a liability upon the defendant.   It makes no difference how negligent or incompetent the superintendent, or how defective the machine; for if the plaintiff, knowing that they were in motion, stepped upon the revolving rolls, he can not recover.   It was an obvious danger— one that he could have easily avoided by staying where he was; or at

least he could have avoided it by refraining from stepping into the box. *Mansfield* v. *Richardson*, 118 *Ga.* 251. If the superintendent had ordered him in so many words to get into the moving machinery, the order would not have warranted obedience to a command to do an act so manifestly dangerous. If an express direction to that effect would not have justified such conduct, neither would most of the negative acts relied on in the petition. The gist of plaintiff's case lies in only one of the many facts charged. The demurrer admits that the lever had a latent defect, known to the defendant but unknown to the plaintiff; that when it was pulled to the point where it caught and apparently indicated that the rollers had stopped, they nevertheless continued to revolve; that the box became full of cotton which covered the rollers; and there being no noise or other circumstance to indicate that they were moving, and having a right to suppose that the rolls were motionless, the plaintiff, following the practice which was customary in the ginnery, stepped into the box for the purpose of forcing the cotton back into the hopper. The allegation to this effect is a distinct allegation of negligence on the part of the defendant; and at the same time it is expressly denied that plaintiff knew the rolls were in motion, or that he voluntarily assumed the risk when he stepped thereon.

At first blush it would seem that the plaintiff had stated himself out of court by the amendment alleging that the superintendent had removed a lamp. The resulting darkness was self-evident. The plaintiff knew that the lamp had been removed, and was instantly charged by law with the duty of avoiding the consequences likely to flow therefrom. He would have no right to continue work about dangerous and moving machinery, even though the darkness had been caused by the negligence of the superintendent in removing the light. Under such circumstances, instead of getting into the machine, he should have stood still or gone from it. And if the failure to detect that the rollers were in motion was due to the removal of the lamp, the plaintiff can no more recover than if in the darkness he had been injured as a result of carelessly putting his hand on any other part of the moving machinery. But reading the petition as a whole, and giving it a fair construction, it can not be said to show with certainty that the room was left in such darkness as to make it negligent

for the plaintiff to continue at work. Considering the petition and the amendment allowed, and the amendment offered which should have been allowed, it is fairly inferable that there were other lights in the ginnery, and there is nothing in the petition which warrants the court in deciding, on demurrer, that the darkness was so great as to make it an act of negligence to continue to work. That is a matter that will have to be determined by the jury on a consideration of the evidence.

*Judgment reversed. All the Justices concur.*