32616. SMITH *v.* HIGHTOWER.

DECIDED OCTOBER 28, 1949.

*Stonewall H. Dyer, Victor K. Meador,* for plaintiffs.

*Walter A. Sims, H. C. Comer,* for defendant.

MacINTYRE, P. J. 1. The plaintiffs' evidence was to the effect that they had been living in the defendant's house on Mayson-Turner Avenue, as tenants, from some time in 1942 until May 21, 1947; in October, 1946, they received from the Office of Price Administration a notice to vacate the premises within six months from October 7, 1946 (that is, by April 7, 1947); on April 15, 1947, the plaintiffs paid rent on the house up until May 6, 1947; on May 6, the plaintiffs tendered their rent which was refused on the ground that the defendant was going to exchange houses with the plaintiffs; that is, the defendant would move into her house on Mayson-Turner and the plaintiffs would move into the house which the defendant was renting on Simpson Street; the defendant intended to remain in the house on Simpson Street until the rent on that house was due on May 19; on May 19 the plaintiffs went to the real-estate agency in charge of the house on Simpson Street and rented it; they were ready to move on that date, but the defendant stated that she could not move, saying, "we are not ready to move. I have to put a new roof on it [the house in which the plaintiffs were living]." The defendant had had carpenters making various repairs on her house on Mayson-Turner for approximately two weeks prior to May 19, but on that date they removed the roof in spite of the remonstrances of the plaintiffs. On May 20, a heavy rainstorm occurred and the rain water leaked into the house and ruined the property of the plaintiffs therein, although the plaintiffs attempted to cover their property with rugs to protect it.

Under this evidence and the rule laid down in *Metzer* v. *Con-*

*nally Realty Co.,* 203 *Ga.* 15 (45 S. E. 2d, 199), the plaintiffs' term as tenants of the defendant ended April 7, 1947, and the plaintiffs became tenants at sufferance, but by accepting the rent on April 15, with no further agreement being made, insofar as appears from the evidence, the defendant thereby, as a matter of law, renewed whatever contract of tenancy had existed between her and the plaintiffs for the preceding term. If the contract which had existed between them prior to the termination of the tenancy on April 7 was for a specified term, the plaintiffs were entitled to hold the premises for another like term. If the contract was for a tenancy from month to month with no time specified for its termination, the plaintiffs held the premises until the end of the calendar year under the provisions of Code § 61-104. If the contract was one of express tenancy at will, it was necessary, after the acceptance of the rent and the consequent renewal of the tenancy at will, for the defendant to give the plaintiffs statutory notice of two months as provided in Code § 61-105. Obviously, the relationship which existed between the plaintiffs was not that of a tenancy at sufferance, as contended by counsel for the defendant. The tenancy at sufferance, in the absence of agreement between the parties, terminated upon the defendant's accepting the rent on April 15.

2. The gist of the plaintiffs' action is not one seeking to recover damages for injuries resulting from a failure on the part of the landlord to keep the premises in repair, after notice. The plaintiffs were the tenants of the defendant. So far as appears from the evidence the house in which they lived was acceptable to them, but the defendant to suit her own convenience and purposes had the roof removed while the plaintiffs were still in possession of the premises with no precautions being taken to protect the plaintiffs' property. "'A covenant for quiet enjoyment is necessarily implied in every lease.' *Adair* v. *Allen,* 18 *Ga. App.* 636 (2) (89 S. E. 1099). Accordingly, where a landlord enters upon the rented premises for the ostensible purpose of making repairs, irrespective of whether it is in conformity with a legal obligation due to his tenant, or whether it is for the purpose of protecting his own property, if his conduct consists of negligent acts of such grave and permanent character as would render the premises unfit for tenancy, and is such as would

actually deprive and would legally import the intent to deprive the tenant of their enjoyment, it amounts in law to an eviction of the tenant . . [and] where . . it appears . . [that] the acts of the landlord complained of by the tenant do not purport to have been committed in conformity with any legal or contractual obligation on his part, the injury growing out of the alleged negligent conduct of the landlord amounts merely to a tort" (*Feinberg* v. *Sutker,* 35 *Ga. App.* 505, (1, 2), 134 S. E. 173); and the same act may be a breach of the covenant for quiet enjoyment and also a wrong causing injury to the tenant for which an action of tort will lie. Winchester *v.* O'Brien, 266 Mass. 33 (164 N. E. 807, 64 A. L. R. 895).

3. "Where by a breach of contract one is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence" (Code, § 20-1410), and "where by negligence one is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence; but this does not apply in cases of positive and continuous torts" (§ 105-2014). "Of course, in every case, whether in suits for personal injuries or injury to property, it will be for the jury to determine whether the plaintiff as a prudent man ought to have taken steps to avoid the damage." *Mansfield* v. *Richardson,* 118 *Ga.* 250, 252 (45 S. E. 269).

The plaintiffs proved their case substantially as laid, and the court erred in taking the case from the jury by dismissing it on motion in the nature of a motion for nonsuit.

*Judgment reversed. Gardner and Townsend, JJ., concur.*