## 44179. STUKES v. TROWELL.

Deen, Judge. Summary judgment should be granted only in those cases where undisputable, plain and palpable facts exist on which reasonable minds could not differ as to the conclusion to be reached. *Malcom v. Malcolm,* 112 Ga. App. 151 (144 SE2d 188). Questions necessitating a decision as to whether a given state of facts shows that lack of ordinary care for one's own safety which will bar recovery (within which

category are placed those situations amounting to the assumption of the risk involved) or only that comparative negligence which will reduce it are generally for the jury. "In this State the doctrine of comparative negligence prevails and it is not all negligence which contributes to an injury that will necessarily prevent a recovery. . . If a driver, from intoxication, is in a condition which renders him incapable of operating [the vehicle] with proper diligence and skill, and this is known or palpably apparent to one entering the car, this is a fact that may be proved for the consideration of the jury." *Powell v. Berry,* 145 Ga. 696, 700 (89 SE 753, LRA 1917A 306). Following *Powell,* this court held in *Sparks v. Porcher,* 109 Ga. App. 334, 340 (136 SE2d 153): "It follows, therefore, that mere knowledge on the part of a passenger that the driver is under the influence of intoxicating beverages is not, as a matter of law, knowledge that such person is so much under the influence of intoxicants as not to be able to drive safely or with ordinary efficiency so as to make the passenger guilty of such lack of ordinary care for his own safety, or assumption of risk, as will bar a recovery against the driver for injuries occasioned by the driver's gross negligence." These cases were not followed in *Freeman v. Martin,* 116 Ga. App. 237 (156 SE2d 511) which constituted a holding that where two people have spent the evening drinking together, and the driver at the time of taking over the wheel is intoxicated to the extent that soon thereafter he slumps over unconscious behind the steering wheel, it must be assumed that his incapacity to drive was clear and palpable to any person in the car. However, in the later case of *Few v. Weekes,* 118 Ga. App. 190 (2) (162 SE2d 884) it was pointed out that if there were in the *Freeman* case anything contrary to the holding in *Powell v. Berry,* 145 Ga. 696, supra, it must yield to the holding of the Supreme Court. The same would apply to *Davis v. Ferrell,* 118 Ga. App. 690 (165 SE2d 313). There is no doubt that except in very extreme circumstances the question of assumption of risk by a guest passenger who rides with a driver known to him to have drunk some alcoholic beverage is a matter best left to the jury and not decided on summary judgment. Any other conclusion would be to hold as a matter of law that the negligence of an intoxicated driver must be rewarded by penalizing the injured passenger, regardless of the circumstances of the case.

The trial court erred in sustaining the defendant's motion for summary judgment.

*Judgment reversed. Bell, P. J., Hall, Pannell and Quillian, JJ., concur. Felton, C. J., Jordan, P. J., Eberhardt and Whitman, JJ., dissent.*

ARGUED JANUARY 9, 1969—DECIDED APRIL 16, 1969— REHEARING DENIED MAY 13, 1969—

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Williston C. White,* for appellant.

*N. Forrest Montet,* for appellee.

### STATEMENT OF FACTS.

Stukes brought suit against Miss Trowell alleging that he, a guest passenger in her car, was injured when she negligently drove it into a telephone pole. Plaintiff's deposition was taken, in which he testified that earlier in the evening he had two cans of beer and that he and Miss Trowell, together with another couple had gone to a drive-in movie, where they had split another can of beer, and after the movie on their return to his fraternity house he had purchased a fifth of bourbon whiskey approximately one-half of which he and Miss Trowell consumed before he escorted her to the apartment of her grandmother, where she obtained the key to the car to take him back to the fraternity house, and as she drove the car out of the driveway onto Clairmont Avenue she made a sweeping right turn, striking the telephone pole on the opposite side of the street.

Concerning her condition he testified: "Q. Now, she was under the influence that evening, wasn't she, Mr. Stukes? A. Yes, sir. Q. You were too, to some extent, weren't you? A. Yes, sir. Q. And you knew that when you got in the car with her, didn't you? A. Yes, sir, but I believe I could have missed the pole." He also testified that although he knew that Miss Trowell was somewhat under the influence from the drinking of the beer and whiskey, she appeared to be driving the car in a normal manner until he "sensed" that they were leaving the roadway shortly before the car struck the pole. "I was looking at her, and then I had the feeling that we weren't traveling in

a straight line. I just had the sensation that we were going off the road, and we hit the post." When she visited him at the hospital she said that she "must have been drunk."

Miss Trowell testified in her deposition that she went with Mr. Stukes and another couple to a movie in a car supplied by the other couple. There was an ice bucket with cans of beer in the car and they drank some of it on the way back. She thought she had one can and did not recall splitting a can with Stukes. After the fifth of bourbon was purchased on the way back they went to the basement of the fraternity house, where they had some drinks—she "did not recall how many, but it must have been three or four." The drinks were "on the strong side." As to whether it was less safe for her to drive after having that much to drink, she asserted, "Yes, sir. I knew it was less safe." As to why she drove the car, she testified that "Howard wanted to borrow my car that night, and I didn't want him to use it because I thought he had had too much to drink." She thought that he had had more to drink than she had, and that he was less capable of driving than she was.

Defendant's motion for summary judgment was granted and plaintiff appeals.

EBERHARDT, Judge, dissenting. While plaintiff testified that as the defendant's escort he exercised control as to where the car was to be driven, we do not feel it necessary to bottom our decision upon this fact. Rather, we would place it squarely upon the proposition that when the plaintiff entered the car with the defendant at the wheel, knowing that she was under the influence of intoxicants to the extent shown by this evidence, he assumed the risk of whatever might happen as a result of her condition. *Redding v. Morris,* 105 Ga. App. 152, 156 (123 SE2d 714); *Freeman v. Martin,* 116 Ga. App. 237 (2) (156 SE2d 511); *Davis v. Ferrell,* 118 Ga. App. 690 (165 SE2d 313).

It is well settled in our law that when one exposes himself to a known and obvious danger he assumes the risk, and cannot recover when he is injured, for he has failed to exercise ordinary care for his own safety. *Southern R. Co. v. Hogan,* 131 Ga. 157 (1) (62 SE 64); *Moore v. Southern R. Co.,* 136 Ga. 872 (72 SE 403). "[T]he plaintiff as a conscious and responsible human

agent must act as the situation and ordinary care require. The great law of self-defense underlies the doctrine requiring a plaintiff to avoid danger. The word 'avoid' is very broad and comprehensive, and it would be impossible to define exactly what the plaintiff shall do in any particular case. *He can 'avoid' danger by refraining from going into what he knows is an unsafe place. He can 'avoid' it by going away from that which he knows or ought to know is dangerous."* Mansfield v. Richardson, 118 Ga. 250, 251 (45 SE 269). (Emphasis supplied.) Plaintiff here could have avoided it simply by selecting another way of getting back to his fraternity house and refraining from getting into the car with a driver whom he knew to be intoxicated. He was in no emergency. There was no compulsion that he take the risk. It is common knowledge, supported by the cold statistics of the Department of Public Safety, that drivers who are under the influence of intoxicants lose much of their capability to drive, are prone to have serious accidents and that much of the carnage on our highways is directly traceable to this as a cause. For this very reason the General Assembly has made it a criminal offense to drive a vehicle on the public streets or highways while under the influence of intoxicants. *Code Ann.* § 68-1625. "Granting that the negligence of the [defendant] was fully established, it is certainly true that [the plaintiff] and his companion were wanting in ordinary care and diligence. They both knowingly and deliberately took a risk the danger of which, to any person of common prudence, would have been plain and obvious." *City of Columbus v. Griggs,* 113 Ga. 597, 598 (38 SE 953, 84 ASR 257). In that case it appeared that on a dark night the plaintiff and his companion had gone out in a buggy over a street where work was being performed and the buggy slid over an embankment.

We have not hesitated to hold that there is an assumption of risk when one, miscalculating the speed of the train, goes upon a railroad track in front of an approaching train thinking that he could get across ahead of it (*Thomas v. Central of Ga. R. Co.,* 121 Ga. 38 (48 SE 683)); or of a street car (*Shroeder v. Ga. R. & Elec. Co.,* 142 Ga. 173 (82 SE 553)); or who runs along the side of a train at night, attempting to attract the attention

of its operators and trips over an obstruction (*Central of Ga. Ry. Co. v. Roberts,* 213 Ga. 135 (97 SE2d 149)); or when he goes into a burning house where he has been informed that there are explosives (*Carbo v. State,* 4 Ga. App. 583 (5) (62 SE 140)); or when he rides on the running board of an automobile and is struck by a passing vehicle (*Taylor v. Morgan,* 54 Ga. App. 426 (188 SE 44)); or of being struck by foul balls when he is a spectator at a baseball game (*Hunt v. Thomasville Baseball Co.,* 80 Ga. App. 572 (56 SE2d 828)); or of injury that may result from engaging in the playing of football (*Hale v. Davies,* 86 Ga. App. 130 (70 SE2d 926)); or of being hit by another vehicle when, at the request of his host, a guest gets out and pushes a stalled car from behind (*Beasley v. Elder,* 88 Ga. App. 419 (76 SE2d 849)); or of being thrown by a horse which he voluntarily rides in a parade (*LaHoste v. Yaarab Mounted Patrol,* 89 Ga. App. 397 (79 SE2d 570)); or of falling on a popcorn box on the floor of a theatre when he attends as a patron (*Rogers v. Atlanta Enterprises,* 89 Ga. App. 903 (81 SE2d 721)); or of falling when riding as a licensee on an open construction elevator (*Youngblood v. Henry C. Beck Co.,* 93 Ga. App. 451 (91 SE2d 796)); or of injury by flying debris from a racing vehicle at the track when attending as a patron (*Tatum v. Clemones,* 105 Ga. App. 221 (124 SE2d 425)); or of injury from the tossing of his body on a roller coaster ride (*Atlanta Funtown v. Crouch,* 114 Ga. App. 702 (152 SE2d 583)); or of riding with a driver who is sleepy, making no effort to keep him awake or to leave the car (*Oast v. Mopper,* 58 Ga. App. 506 (199 SE 249)); or of continuing to drive a vehicle after discovering that the brakes do not function (*Redding v. Morris,* 105 Ga. App. 152 (123 SE2d 714)); or of entering a car that is about to engage in drag racing (*Roberts v. King,* 102 Ga. App. 518 (116 SE2d 885)); or of catching a vicious bull (*Graham v. Walsh,* 14 Ga. App. 287 (80 SE 693)); or of having participants in a wrestling match jump from the ring onto him, a spectator (*Davis v. Jones,* 100 Ga. App. 546 (112 SE2d 3)); or of sticking a hand into a waste chute of an ice machine to get a handful of ice and getting the fingers severed (*Sanford v. Frigidice Co.,* 68 Ga. App. 593 (23 SE2d 544)); or of standing on the rear of a truck moving across an open

field (*DeWinne v. Waldrep,* 101 Ga. App. 570 (114 SE2d 455)); and that a laborer assumes the risks naturally incident to and in the course of employment (*Noble v. Jones,* 103 Ga. 584 (30 SE 535)); of driving a farm tractor (*Swails v. Carpenter,* 112 Ga. App. 117 (144 SE2d 182)); even of hazardous employment (*Johnson v. Alabama & Ga. Iron Co.,* 8 Ga. App. 787 (70 SE 156)). There are many others. Some of these situations are less innocuous and some involve greater risk than that involved here. It is not the extent of the risk; it is the taking of it in the face of one's knowledge thereof. We can perceive no reason for applying the doctrine in these situations and relieving one who knowingly and deliberately gets into a car operated by another whom he knows to be intoxicated. Perhaps the majority is committed to the old adage that "There is nothing in this world constant but inconstancy."

Nor does it matter that the plaintiff was himself intoxicated when he got into the car. Just as one cannot be excused from the commission of a crime while he is in a state of voluntary intoxication (*Grimes v. Burch,* 223 Ga. 856 (159 SE2d 69)), he cannot on that account, be relieved of his duty to exercise ordinary care for his own safety.

For the reasons stated in *Freeman v. Martin,* 116 Ga. App. 237, 241, supra, *Sparks v. Porcher,* 109 Ga. App. 334, supra, does not require a different result here. Nor does *Powell v. Berry,* 145 Ga. 696, supra, for the distinguishing reasons given in *Davis v. Ferrell,* 118 Ga. App. 690, supra, and for a further reason.

In relying on the report of *Powell* in 145 Ga. 696, there is an oversight of its former appearance in 143 Ga. 59 (84 SE 121), when it was appealed because of the overruling of a general demurrer to the petition. There was affirmance of the ruling, but the court observed (p. 60) that there was nothing in the petition to show that the guest, then deceased, had been aware of the intoxicated condition of the driver at the time of entering the automobile, which suggests that if so he would have been barred from recovering—and this without imposing on the deceased any condition or requirement that he then knew that the intoxication of his host made it less safe to drive! There was in that case no admission of the guest (as there is here) that he knew of the

host's intoxication. He was dead, could not make the admission by testifying, and there was no way of imputing that knowledge to him or of proving it save by submitting the issue to a jury.

In his special concurrence Mr. Justice Atkinson makes reference (p. 707) to the prior appeal as it appeared in 143 Ga. 59, asserting: "The clear inference was that the judgment overruling the demurrer [in that case] would not have been affirmed, if it had appeared upon the face of the petition that plaintiff's son was aware of defendant's intoxicated condition." With that we agree. In the majority opinion the court indulged in much discussion relative to the matter of whether the plaintiff should have been permitted to go to the jury in the light of the defendant's state of intoxication, but this was in connection with the refusal of certain *requests to charge,* some of which were covered by the general charge and some of which were imperfect because of inaccuracies in them.

Once the guest admits knowledge of the fact of the driver's intoxication, whether by pleadings or by testimony, the assumption of risk doctrine should be applied or it should be held that he failed to exercise ordinary care for his own safety by getting into the car in spite of his knowledge, absent some emergency or compulsion.

The summary judgment was properly granted.

I am authorized to state that Chief Judge Felton, Presiding Judge Jordan and Judge Whitman concur in this dissent.