## 48064. CORAL PARK, INC. v. GUY et al.

HALL, Presiding Judge. Defendant in a personal injury action appeals from the judgment and from the denial of its motions for new trial and judgment n. o. v. Defendant is a corporation exclusively owned by two men.
The plaintiff slipped and fell on a terrazzo entranceway to defendant's shopping mall in Brunswick. It was the "opening day" of the mall, although parts of it were still under construction. Plaintiff was wearing rubber soled shoes and had walked through mud to get to his car. He parked in the lot and walked toward the entrance carrying his infant child. He had to cross a muddy, unfinished area between the paved portion of the lot and the entrance. It had rained most of the day, off and on. The entranceway had a canopy type roof, open on three sides, so the floor was exposed to a blowing rain. The floor apparently had a brick strip between, and perpendicular to, the doors but

the area immediately in front of the doors was terrazzo. Plaintiff testified that he saw the floor clearly from a distance as he approached; that it appeared to be covered with water; and that he deliberately chose to walk across that area directly in front of an opened door rather than the brick portion.

Originally, there were three other party defendants: The general contractor and the terrazzo subcontractor (who were granted directed verdicts) and the two-man architectural firm which designed and supervised the construction of the mall. The firm and the individual architects were released by the jury.

Plaintiff's case was brought in essentially two counts: that terrazzo was an inherently dangerous building material used outdoors without an abrasive additive (for which use the defendant would be absolutely liable); or that defendant had negligently failed to warn or provide safeguards against a situation made dangerous by the circumstances of the weather.

A large portion of the parties' arguments on this appeal and of the testimony below concerns the question of inherent danger. We can discover no case law which deals with this particular question under any similar circumstances. Terrazzo is a compound of cement and marble chips which is poured in a way similar to concrete, then ordinarily ground, polished and sealed. Its desirability as a building material stems from both its durability and its aesthetic qualities. It is, of course, more expensive than concrete. The original specifications for the mall called for a concrete floor, both inside and out, but were later changed to terrazzo for the inside at the request of several tenants. The evidence strongly indicates that the terrazzo was poured right on through to the entranceway by mistake. The general contractor had laid the forms there and the subcontractor merely followed the forms. When the inspecting architect saw this, he told one of the mall owners it was a mistake and that he could have it torn out if he wished. He *did not* tell the owner that it would be dangerous; and in fact testified that if the owner had asked him what to do, he would have advised retaining it as it was a higher quality product for the same money.

Four terrazzo "experts" testified: the two defendant architects, the defendant subcontractor and an architect called by the plaintiff as his expert. Their testimony was essentially the same and the following is a distillation: Terrazzo is a widely used and acceptable flooring material. Standards for its use are set out in

publications of the Terrazzo Institute. The Institute does not recommend any abrasive additives, except, formerly, on ramps and steps. In the latest bulletin, it recommends *against* their use because (and most of the witnesses seemed to agree) any value abrasives might have is lost when the sealer is applied; and the sealer is necessary to prevent the floor from becoming porous and retaining dirt. (One witness did suggest that abrasive strips, like those used in bathtubs, could be laid over the finished surface.) There was testimony identifying numerous places in coastal Georgia, Florida and New Orleans where terrazzo without abrasive additives had been used outdoors, including the Savannah Airport.

The defendant architects stated, of course, that they would not specify, allow an owner to specify, or accept a mistake in building materials which they believed dangerous. However, with one exception in which the question was not put, every witness said that if he were given the choice, he would prefer to use abrasives. In light of their other testimony that plain terrazzo was not considered dangerous; that in any event the sealer would render abrasives nugatory; and that plain terrazzo was in use many places outdoors, their "preference" testimony was little more than a rearguard covering action. Under the evidence here, we cannot say as a matter of law that terrazzo without abrasive additives used in places exposed to the elements is inherently dangerous; nor would a jury be authorized to so find.

The question then remains whether the defendant mall corporation had knowledge superior to that of the plaintiff that the entranceway was dangerously slippery when wet, thus giving rise to a duty to either warn him of the condition or provide appropriate safeguards such as handrails. That superior knowledge is the true ground of liability has been stated many times. See *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170 (138 SE2d 77); *Holtzclaw v. Lindsay,* 122 Ga. App. 703 (178 SE2d 561); *McKnight v. Guffin,* 118 Ga. App. 168 (162 SE2d 743). We have diligently searched this lengthy record for any evidence that any agent of the defendant corporation had ever used this particular entrance (there were others) after or during a rain and actually knew it to be slippery; or that the entrance had been in general use for a sufficient time that the corporation ought to have known its condition when wet. Of course, both plaintiff and defendant had equal knowledge of the rain that day. The only evidence coming close to the point was the self-serving

testimony of the two defendant architects that they would have personally "preferred" abrasive additives. By inference, they may have had an opinion, uncommunicated to the owner, that there was some safety risk. And yet, these defendants, were absolved by the jury.

We are left with no negligence shown on the part of the defendant mall corporation. All it did was commission the building of a structure, relying upon the expertise of others to do it soundly and safely, and on what (for all the record shows) was the first day of use, someone fell at the entrance. It is well established that a business proprietor is not an insurer of the safety of its customers and that some act of negligence must be attributed to it. *Gibson v. Consolidated Credit Corp.,* 110 Ga. App. 170, supra; *Platz v. Kroger Co.,* 110 Ga. App. 16 (137 SE2d 561); *Hill v. Davison-Paxon Co.,* 80 Ga. App. 840 (57 SE2d 680). We can find none. For this reason, the court erred in denying defendant's motion for judgment n. o. v.

*Judgment reversed. Bell, C. J., Eberhardt, P. J., Deen, Clark and Stolz, JJ., concur. Pannell, Quillian and Evans, JJ., dissent.*

ARGUED APRIL 5, 1973 — DECIDED SEPTEMBER 24, 1973 — REHEARING DENIED OCTOBER 30, 1973 —

*Falligant, Doremus & Karsman, Ogden Doremus,* for appellant.
*Ronald F. Adams,* for appellees.

EVANS, Judge, dissenting. The majority reverses the jury verdict and judgment for plaintiff. I dissent, because I believe a jury question was presented as to defendant's negligence.

Plaintiff slipped and fell on a terrazzo entranceway to defendant's shopping mall in Brunswick. It had been raining, and the entranceway was so constructed that the canopy type roof, open on three sides, did not prevent the fall of rain upon the terrazzo surface. Terrazzo is very slippery when wet, and, for that reason, is not generally used as a walkway for exterior surfaces, such as sidewalks. But it was so used in this instance, as a result of which plaintiff received serious injuries.

We recognize the principle asserted by the majority opinion, that a business proprietor is not an insurer of the safety of his customers. That does not mean, however, that he may create a dangerous situation, or construct walkways, which, when exposed to natural weather conditions such as rainfall, creates an unusual hazard. And where a pedestrian uses such entrance by invitation of the proprietor, and has as much chance of slipping and falling

as he has of retaining his balance, and does slip and fall, and is injured, a jury should determine whether defendant committed such negligence as would authorize a recovery by plaintiff. Negligence is peculiarly a subject for determination by a jury. See *Stukes v. Trowell,* 119 Ga. App. 651 (168 SE2d 616); *Chastain v. Atlanta Gas Light Co.,* 122 Ga. App. 90 (2) (176 SE2d 487); *American Lighting &c. Co. v. Baldwin,* 126 Ga. App. 41, 42 (190 SE2d 82).

In clear and cogent language Presiding Judge Hall (author of the majority opinion) in *Wakefield v. A. R. Winter Co.,* 121 Ga. App. 259 (174 SE2d 178), holds: "Issues of negligence, including the related issues of assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence and comparative negligence, are ordinarily not susceptible of summary adjudication whether for or against the plaintiff or the defendant, *but must be resolved by a trial in the ordinary manner."* (Emphasis supplied.) In that case summary judgment had been granted to the proprietor of premises against one who was injured thereon. He sets forth very eloquently and concisely the reasons why a *jury should decide* whether the proprietor is liable, and states: "A landmark decision of the Supreme Court on this question is found in *Wynne v. Southern Bell Tel. &c. Co.,* 159 Ga. 623, 628 (126 SE 388): 'Where the owner or occupier of premises fails to keep them in a reasonably safe condition for the use of those who go thereon by his invitation, is an invitee who is injured by a patent defect in such premises, of which she has no actual notice, to be held as a matter of law to be lacking in ordinary care in failing to observe the defect in time to avoid the injury? . . . It cannot be held that the circumstances were such that an ordinarily prudent person would have reason to apprehend its existence.' " P. 262.

I therefore dissent and would affirm the trial court in upholding the verdict of the jury in plaintiff's favor and the judgment entered thereon in favor of plaintiff.

I am authorized to state that Judges Pannell and Quillian join in this dissent.