Richard Leon MITCHELL,
Plaintiff-Appellant,

v.

YOUNG REFINING CORPORATION,
Defendant-Appellee.

No. 74–3368.

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1975.

Warner R. Wilson, Jr., Earl B. Benson, Atlanta, Ga., for plaintiff-appellant.

Paul M. Talmadge, Jr., S. Seaborn Jones, Atlanta, Ga., for defendant-appellee.

Before COLEMAN, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In a diversity action based on negligence, summary judgment was granted in favor of the defendant-appellee, Young Refining Corporation, on the grounds that the plaintiff-appellant Mitchell had assumed the risk of injury to himself when he stepped on some greasy pipes adjacent to a railroad spur on Young Refining's premises. Finding that the district court correctly interpreted Georgia law applicable to the undisputed facts on the assumption of risk issue, we affirm.

## I.

Appellant Richard Leon Mitchell, a resident of Birmingham, Alabama, was an employee of Southern Railroad Company ("Southern") at the time of his injury in November 1971. In the course of his employment, he had been on the premises of Young Refining in Douglasville, Georgia, at least a dozen times to assist in coupling empty tank cars from Young Refining's spur track with Southern trains. The area on the spur track where he worked was an area where asphaltic crude was unloaded from the tank cars by means of a steam-assisted pumping and drainage system. On one side of the spur track in this area was a warehouse; on the other side was the system of pipes and machinery used in off-loading the crude into refinery tanks. Young Refining does not dispute Mitchell's deposition statement that the area between the warehouse and the spur track was too narrow for him to work in, therefore he had to work among the pipes on the other side. Because of oil spills and leaks, the area was very oily and greasy. The pipes throughout the area were "caked with grease," according to Mitchell's testimony. On his pre-

vious trips to Young Refining's premises, Mitchell had noticed the condition, recognized that it made the area hazardous to work in, and complained to his Southern superiors at safety meetings. His concern about the condition was conveyed to Young Refining by Southern.

On the occasion in question, a Birmingham bound Southern train stopped at Young Refining to pick up some empty tank cars. Mitchell's responsibility was to secure the couplings between the cars, connect air hose couplings and remove the hand brakes on the cars. After signaling for the cars to be pulled from the track, it was Mitchell's practice. to ride out of the area on one of the slowly moving cars. To get close enough to the track to reach the passing cars, he had to step on two of the steam pipes. On the second step, his foot slipped and he fell, incurring an injury to his left knee and leg, an allegedly permanent disability.

Mitchell's complaint alleged that Young Refining was negligent in failing to maintain its property and facilities in proper condition, knowing that plaintiff and others were required to come onto its property as part of their jobs.

## II.

In this diversity action, we must, of course, apply Georgia law.[1] The Georgia statute which is central to this case is Ga.Code Ann. § 105–603:

If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.

The Georgia courts have treated the traditional torts principle of assumption of risk not as a separate defense barring recovery, but as an instance of the plaintiff's lack of ordinary care which will bar a recovery under this statute.

1. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*Stukes v. Trowell,* 119 Ga.App. 651, 168 S.E.2d 616 (1969).

■ To establish the defense of assumption of risk, it must appear that the plaintiff not only had knowledge of the condition or defect complained of, but also that the plaintiff knew or should have known of the danger involved in encountering the condition or continuing the course of action which resulted in the injury. *Wasserman v. Southland Investment Corp.,* 105 Ga.App. 420, 124 S.E.2d 674 (1962); *Simpson v. Dotson,* 133 Ga.App. 120, 122, 210 S.E.2d 240 (1974). There are numerous situations, however, which the Georgia courts have held are so obviously dangerous that knowledge of the condition or defect itself is knowledge of the probable danger and risk of injury posed by the condition. *See, e. g., Yankey v. Battle,* 122 Ga.App. 275, 176 S.E.2d 714 (1970) (darkened stairway); *Wade v. Roberts,* 118 Ga.App. 284, 163 S.E.2d 343 (1968) (loose gravel on driveway); *Southland Butane Gas Co. v. Blackwell,* 211 Ga. 665, 88 S.E.2d 6 (1955) (lying on public highway in intoxicated condition).

The district court relied upon *Wade v. Roberts, supra,* an "obvious danger" case, in finding that Mitchell had "assumed any risks incident to working around the greasy pipes located on Young Refining's property and lacked the ordinary care for his own safety which prevents a recovery in this action." The district court did not suggest, however, nor do we decide, that under Georgia law greasy pipes present such an obvious danger that a plaintiff who works around them, knowing them to be greasy, has assumed the risk of injury as a matter of law. It is not necessary to reach that issue because Mitchell's answers to interrogatories and his deposition unquestionably reveal that he was well aware that the grease and oil collected near the spur track where he worked presented a safety hazard.

■ Mitchell does not contest the fact that he recognized the danger. Rather, he argues that his voluntariness in using the area must be considered, and since he was required to be in the area to accomplish his job assignment for Southern, he was not there as a matter of choice and thus did not voluntarily assume the risk. He relies upon *McChargue v. Black Grading Contractors, Inc.,* 122 Ga.App. 1, 176 S.E.2d 212 (1970) and *Southern Railway Co. v. Hogan,* 131 Ga. 157, 62 S.E. 64 (1908).

In *McChargue,* the plaintiff, an employee of a general contractor, was injured when hit by a tree being pushed over by an employee of the defendant subcontractor. On a prior appeal, the Georgia Court of Appeals reversed summary judgment granted in favor of the defendant, holding that there were questions of material fact. *McChargue v. Black Grading Contractors, Inc.,* 119 Ga. App. 35, 166 S.E.2d 43 (1969). At trial on remand, verdict was for the defendant. On the second appeal, one issue was whether the trial court was correct in giving instructions on the assumption of risk doctrine. The Court of Appeals affirmed the instructions, stating, "Plaintiff by his own testimony admitted knowledge of the danger attendant to the pushing down of trees and nonetheless *voluntarily assented* to be exposed to it by working in the area where this activity was in progress." *McChargue, supra,* 122 Ga.App. at 4, 176 S.E.2d at 216 (emphasis added). According to the plaintiff's testimony, he "possibly could have waited a day or so to begin his work," *McChargue, supra,* 119 Ga.App. at 37, 166 S.E.2d at 44, hence it was not necessary for him to be at the job site while the defendant was pushing down trees.

In the other case relied on by Mitchell, *Southern Railway Co. v. Hogan,* 131 Ga. 157, 62 S.E. 64 (1908), the plaintiff was hit by a train while unloading his wagon in a narrow space between two railroad tracks. The plaintiff knew that his position was dangerous if a train approached, and that he could safely unload on the other side of the track. Nevertheless, he chose the riskier course of action because it was easier and

quicker. The court concluded he had voluntarily assumed the risk and reversed a judgment in his favor.

Although in the two foregoing cases, the Georgia courts have mentioned the voluntariness factor, it does not appear that voluntariness or the existence of safe and reasonable alternatives is invariably a necessary element of the Georgia assumption of risk doctrine.[2] A case more factually analogous to Mitchell's, and therefore more instructive to us, is *Yankey v. Battle,* 122 Ga.App. 275, 176 S.E.2d 714 (1970). The plaintiff, a domestic servant for the defendants, testified that she was required to use a basement restroom in her employer's house. On this occasion the light bulb in the stairwell went out while the defendants were not at home, and she attempted to descend the darkened stairs to the basement. She missed a step and fell. The court held that summary judgment should have been granted for the defendant since this was a "clear and indisputable case of voluntary assumption of the risk," despite the fact that plaintiff contended she was "forced" to use the stairwell. *Id.*

Likewise, in *Webb v. Standard Oil Co.,* 451 F.2d 284 (5th Cir. 1971), this court, without discussing voluntariness, held that a case of assumption of risk under Georgia law had been made out by the defendant under circumstances hardly distinguishable from those before us. The plaintiff had been injured in the course of his employment while climbing a ladder on the side of a petroleum tank belonging to the defendant. He had climbed the ladder many times before, had complained of its condition, and had been assured that it would be fixed. Even giving the plaintiff the benefit of

the most favorable legal relationship possible under the facts, a "quasi master-servant" relationship, the plaintiff's knowledge of the dangerous condition of the ladder and his persisting to climb it in that condition barred his recovery.

Mitchell has not contended that he had to be ordered by Southern to continue to work in the spur track area after his complaint. It does not appear that he resisted carrying out his duties as a Southern trainman at Young Refining. Thus whatever pressure he might have felt as a Southern employee could not have been any greater than that in *Webb, supra,* or *Yankey, supra.*

 Mitchell also argues that the assumption of risk doctrine outlined above is limited in application to "restricted areas of travel." He contends that the greasy area around Young Refining's spur was larger than the stairwell in *Yankey, supra,* for instance, or the driveway in *Wade, supra.* He contends that it is unreasonable to hold the plaintiff to assuming a risk spread over so large an area of operation. We find this argument unpersuasive. In the first place, Mitchell's description of his activities shows that he only used that part of the area which was closest to the track as a walkway to get from train to train; thus, the area he was concerned with was itself somewhat narrowly defined and restricted in the same manner as the cases he attempts to distinguish.

Furthermore, Georgia courts have never articulated such a distinction, nor can we think of a rationale for their doing so. The cases Mitchell cites in support of his perceived distinction are factually different from his. In *Kreiss v. Alatoona Land, Inc.,* 108 Ga.App. 427, 133 S.E.2d 602 (1963), reversal of summary

---

**2.** There is language in *Whitehead v. Seymour,* 120 Ga.App. 25, 28, 169 S.E.2d 369, 371 (1969), which suggests to the contrary: "Assumption of risk . . . assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not." The factual context of that statement, however,

was to refute the application of assumption of risk where the windshield of plaintiff's car suddenly became so fogged over that he could not see where he was going. This is so clearly not a situation of the plaintiff's making or choosing that we hesitate to read these words as cancelling out the undeniable implications of the Georgia cases discussed in our opinion, *infra.*

judgment for the defendant turned on the fact that the plaintiff did not know of the particular condition which made it dangerous to traverse the defendant's dock in the dark and which caused her injury. In Mitchell's case, he clearly knew of the danger involved in entering the area. In *Hanchey v. Hart,* 120 Ga. App. 677, 171 S.E.2d 918 (1969), the plaintiff drove into a foggy, smoky area of a highway and became involved in a five-car collision. Once again reversing summary judgment for the defendant, the Georgia court noted that there was conflicting testimony as to the density of the fog. It concluded that it could not rule as a matter of law that the plaintiff had assumed a foreseeable unreasonable risk of harm. *Id.* at 681, 171 S.E.2d 918.

When considered in their totality, neither of these cases detracts from the long standing principle of Georgia law that one who is fully and completely aware of the dangerous or defective conditions he is encountering, and the danger to himself entailed therein, assumes the risk of injury to himself and is barred from holding another liable for any injuries he may suffer as a result.[3] Such is precisely the case with Mitchell here, and we must affirm the district court's holding that he assumed the risk of being injured by the conditions along the spur track on Young Refining's premises.

### III.

Mitchell also attempts to rely upon Georgia's exception to the defense of assumption of risk or lack of ordinary care which pertains when the defendant's conduct constitutes wilful and wanton negligence. *Georgia Power Co. v. Deese,* 78 Ga.App. 704, 708–09, 51 S.E.2d 724 (1949); *Richardson v. Pollard,* 57 Ga. App. 777, 779–80, 196 S.E. 199 (1938). Mitchell neither alleged wilful and wanton conduct on Young Refining's part in his complaint nor did he argue it in his opposition to the motion for summary judgment. The allegation of wilful and wanton negligence appeared in a pretrial order in connection with a claim for additional damages. Young Refining expressly objected on the grounds that the record would not support going to trial on the issue.

Wilful and wanton negligence which will overcome a plaintiff's assumption of risk has been defined as "conduct evincing a wilful intention to inflict the injury or else so reckless or indifferent to the consequences, where life or limb is involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent." *McChargue v. Black Grading Contractors, Inc.,* 122 Ga.App. 1, 6, 176 S.E.2d 212 (1970). There is absolutely nothing in the record which would support such a finding as to Young Refining, or which would indicate that Mitchell could produce any evidence to support such a finding if given a change to go to trial on the issue. His belated reliance on it in this court is therefore futile.

For the foregoing reasons, the judgment is

Affirmed.

---

**3.** Some weakening of Georgia's strict approach to assumption of risk and lack of ordinary care may be inferred from the recent case of *Phelps v. Consolidated Equities Corp.,* 133 Ga.App. 189, 210 S.E.2d 337 (1974), where the plaintiff slipped on ice which covered the entire grounds of her apartment complex. " 'Knowledge of the presence of ice and snow would impose upon the plaintiff the duty of exercising that degree of care commensurate with her knowledge, but would only be a circumstance to be considered by the jury along with all others in determining if the plaintiff exercised due care for her own safety.' *Grizzell v. Foxx,* 48 Tenn.App. 462, 348 S.W.2d 815." *Id.* at 193, 210 S.E.2d at 340. It is, of course, impossible to determine whether this case signals the beginning of a new development in Georgia law, or whether future Georgia courts will limit it or perhaps overrule it. As a federal court sitting with diversity jurisdiction, we must apply that Georgia law which presently bears the overwhelming weight of authority.